UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| VIRGINIA SILANO | ) | CIVIL NO. 3:17-CV-01498 (KAD) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN HAMMEL | ) | |
| Defendant. | ) | MARCH 27, 2019 |

**MEMORANDUM OF DECISION RE:**
**THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Kari A. Dooley, United States District Judge

This case arises out of the arrest of the *pro se* plaintiff, Virginia Silano, (the "Plaintiff" or "Silano") on November 23, 2011 for harassment in the second degree, in violation of Conn. Gen. Stat. § 53a-183(a). Silano was arrested by defendant Detective Kevin Hammel (the "Defendant" or "Hammel"), formerly, of the Trumbull Police Department. The operative complaint asserts a claim for malicious prosecution based on the federal constitution and Connecticut common law. Pending before the Court is the Defendant's motion for summary judgment. For the reasons stated herein, the motion for summary judgment is GRANTED.

**Facts[1]**

The situation leading to the Plaintiff's arrest began with a dispute between Silano and her neighbor George Cooney ("Cooney"). During the relevant time period, Silano and Cooney were

---

[1] The relevant facts are taken from the Defendant's Local Rule 56(a)(1) Statement ("Def.'s SMF"); (ECF No. 48-2); and attached exhibits; (ECF Nos. 48-3 – 48-12, 64-1); and the Plaintiff's Local Rule 56(a)(2) Statement ("Plf.'s SMF"); (ECF No. 58); and attached exhibits; (ECF No. 58-1 – 58-2).

The Court observes that Silano repeatedly qualified her admissions and repeatedly failed to cite to evidence in the records in support of her qualified admissions and denials. Rule 56(a)2 of the District of Connecticut Local Rule of Civil Procedure ("Local Rules") requires that the party opposing a motion for summary judgment respond to facts in the moving party's Local Rule 56(a)1 Statement by "admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." Local Rule 56(c) provides that "each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

members of a private recreational community managed and maintained by the Pinewood Lake Association ("PLA") through a Board of Governors, of which Cooney was the president. (Def.'s SMF at ¶ 3.) At this time, Cooney also worked for Hemlock Manor, LLC ("Hemlock Manor"),[2] which contracted with various PepsiCo., Inc., organizations and affiliates (individually and collectively, "Pepsi") to perform investigations and audits of Pepsi products. (*Id.* at ¶ 4; *see also* Def.'s Ex. B at 1, 4; Def.'s Ex. C at 1–2; Def.'s Ex. E; Def.'s Ex. F-1.)

In 2010, Silano alleges that she complained to Cooney about the sale of "unredeemable" Pepsi products on PLA grounds. (Plf.'s SMF at ¶ 5.) Thereafter, Silano contacted the Connecticut Department of Environmental Protection concerning this issue. (Def.'s Ex. A at 70:2–8; Def.'s Ex. B at 190:6–9.) In December 2010, Silano further contacted Pepsi's corporate offices in Waterbury to complain about dirty and expired Pepsi products being sold in Connecticut. (Rev. Compl. at ¶ 6; Def.'s SMF at ¶ 11; Def.'s Ex. A at 69:1–9.) The Plaintiff was referred to the legal department of Pepsi in New York, which in turn referred her to Pepsi-Cola Bottling Company of New York ("Pepsi Bottling Company"). (Def.'s SMF at ¶ 11; *see* Def.'s Ex. A at 69:20–70:1.) In early January 2011, Silano again contacted Pepsi Bottling Company and reported that Cooney was reselling Pepsi through the PLA without authorization. (Rev. Compl. at ¶ 7; *see* Def.'s SMF at ¶ 11; Plf.'s Ex. 1 at ¶¶ 4, 7, 8.) Silano alleges that Cooney subsequently contacted the Trumbull

---

The Plaintiff's failures to comply with Local Rule 56(c) "frustrate [Local] Rule 56(a)'s purpose of clarifying whether a genuine dispute of material facts exists." *Zamichiei v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-00739 (VAB), 2018 WL 950116, at *1 (D. Conn. Feb. 20, 2018) (quoting *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 287 F. Supp. 3d 153, 157, n.2 (D. Conn. 2017)). The Court therefore deems admitted all qualified admissions and denials that do not comply with Local Rule 56 for purposes of resolving this motion. *See* D. Conn. L. Civ. R. 56(a)(3) ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1. . . ."). Accordingly, all of the facts set forth herein are undisputed unless otherwise indicated.

[2] The Plaintiff disputes whether Cooney worked for Hemlock Manor or directly for Pepsi. In support of her denial of this fact, the Plaintiff cites to her affidavit, in which she attests that "Cooney told me in 2010, that he worked for Pepsi." (Plf.'s Ex. 1, at ¶ 5.) The Court notes that Cooney's alleged statement that he "worked for Pepsi" is not inconsistent with the evidence that he had a contractual relationship with Pepsi.

Police Department concerning her complaints to Pepsi, and Hammel contacted Silano in response to that complaint in January 2011. (Rev. Compl. at ¶ 8; Plf.'s SMF at ¶ 13; Plf.'s Ex. 1 at ¶ 8.) At that time, Silano alleges that she confirmed to Hammel that she had complained to Pepsi about Cooney's sale of expired Pepsi. (*Id.*)

In early 2011, Silano was arrested for, *inter alia*, an incident in which she allegedly pointed a firearm at another member of the PLA Board of Governors.[3] (Def.'s Ex. B. at 1; Def.'s Ex. C at 1; Plf.'s Ex., ECF No. 65, at 8; *Silano v. Cooney*, No. FBT-cv-14-6045374-S, 2017 WL 1194322, at *2 (Conn. Super. Ct. Feb. 22, 2017).) On May 31, 2011, Cooney called a PLA meeting to discuss suspending Silano's and her husband's membership with the PLA or expelling them from the PLA because of the firearm incident and other incidents as well. (Def.'s SMF at ¶ 6; Def.'s Ex. B at 1; Def.'s Ex. E.) Silano resigned prior to the meeting, but the Board of Governors continued to evaluate her husband's membership. (Def.'s Ex. E at 1.)

In early June 2011, Silano contacted Pepsi again to complain about Cooney's alleged distribution of dirty and expired Pepsi in Connecticut. (Def.'s SMF at ¶¶ 14, 17.) On or about June 9, 2011, Cooney submitted a written complaint against Silano to Hammel. (*Id.* at ¶ 7; Def.'s Ex. E.) In that statement, Cooney provided background information concerning the relationship between himself, Silano, and the PLA. (Def.'s Ex. E.) Cooney explained that he had learned that Silano was contacting the corporate offices of Pepsi and its affiliates and making negative remarks about him. (*Id.*) Cooney felt that Silano's actions were in retaliation for her recent resignation from the PLA and were designed to intimidate him and the Board of Governor's with respect to the on-going proceedings concerning her husband. (*Id.*) Hammel noted that the matter appeared

---

[3] Silano was not convicted of this charge or any of the other charges that arose during this time period. *Silano v. Cooney*, No. FBT-cv-14-6045374-S, 2017 WL 1194322, at *2 n.1 (Conn. Super. Ct. Feb. 22, 2017). The Court notes that the Plaintiff refers to other events arising out of disputes within the PLA community, some of which resulted in her arrest. Those events are not before this Court and are not germane to the Court's decision.

3

to be civil in nature but informed Cooney that he should file an additional report if the complaints by Silano continued. (Def.'s Ex. C at 1.)

Around this time, Silano claims that Pepsi contacted her concerning Cooney. (Plf.'s Supp. Aff., ECF 65, at ¶ 7.) Because she was no longer a member of the PLA, Silano claims that she referred Pepsi to Michele Kingsbury, her long-time neighbor and the plan governor for the PLA.[4] (Rev. Compl. at ¶¶ 6, 9; Plf.'s Ex. 8 at 14:19–24; Plf.'s Ex. 11 at ¶ 6; Plf.'s Supp. Aff., ECF 65, at ¶ 7.) Thereafter, Pepsi contacted Kingsbury twice in late June or early July 2011 to discuss Cooney. (Plf.'s SMF at ¶ 27; Plf.'s Ex. 8 at 25:9–25:16; Plf.'s Ex. 11 at ¶¶ 4, 6.) The Pepsi representative told Kingsbury that Silano had referred her to him and had given him her phone number. (Plf.'s Ex. 8 at 20:10–20:14, 21:16–21:25.) After speaking with the Pepsi representative, Kingsbury allegedly told Cooney about those conversations, although Cooney later testified he had no recollection of that alleged conversation. (Plf.'s SMF at ¶ 27; Plf.'s Ex. 11 at ¶ 5; Plf.'s Ex. 13 at 99:13–100:13.)

On August 5, 2011, Cooney submitted a sworn statement to Hammel. (Def.'s SMF at ¶ 12; Def.'s Ex. C.) In that statement, Cooney again provided background information concerning his relationship with Silano, including the fact that he was a witness to the pending firearm case against Silano. (Def.'s Ex. C at 1.) Cooney also explained that he had recently learned that Silano had again contacted Pepsi Bottling Company on July 28, 2011 and once again made negative and false allegations against him. (*Id.*) Cooney asserted that Silano's conduct "serve[s] no legitimate purpose other than to repeatedly annoy and alarm myself and my business associates." (*Id.* at 2)

---

[4] The Defendant has not indicated whether the Plaintiff's factual allegations concerning Kingsbury are in dispute. For purposes of resolving the pending motion for summary judgment, the Court treats the allegations concerning Kingsbury's role in this matter as undisputed.

Cooney advised that Pepsi had threatened to cancel his contract with it due to Silano's conduct, which would result in a significant loss of revenue for his company, contractors, and family. (*Id.*)

To investigate this complaint, Hammel contacted Silano; (Plf.'s Ex. 1 at ¶ 11); and Marc Aliberti, a business associate of Cooney and Pepsi Bottling Company; (Def.'s SMF at ¶ 18; Def.'s Ex. F at ¶ 3; Def.'s Ex. F-1). On August 8, 2011, Hammel interviewed Silano, who denied contacting Pepsi on July 28, 2011. (Plf.'s Ex. 1 at ¶ 11.C.) Hammel contacted Aliberti in September or October 2011 concerning Cooney's complaint. (Def.'s Ex. F at ¶ 3.) On October 2, 2011, Aliberti submitted a written statement concerning the events in question.[5] (*Id.* at ¶ 4; Def.'s Ex. F-1.) Aliberti related that he was informed by Pepsi Bottling Company on June 2, 2011 and July 28, 2011 that Silano had called and made certain negative allegations against Cooney. (Def.'s Ex. F-1.) Alberti noted that Pepsi Bottling Company told him that it deemed Silano's allegations to be unsubstantiated after speaking with her in June 2011 and that Silano was unable to provide further proof of her allegations in July 2011. (*Id.*) Nevertheless, Pepsi expressed its displeasure with these continued allegations and discussed terminating its contract with Hemlock Manor due to Silano's continuing allegations. (*Id.*)

On October 19, 2011 and October 25, 2011, Hammel contacted Silano's attorney to arrange for another interview with her, but to no avail. (Def.'s SMF at ¶¶ 27–29; Def.'s Ex. B at 4.) On November 3, 2011, Hammel applied for an arrest warrant for Silano charging her with harassment in the second degree, in violation of Conn. Gen. Stat. § 53a-183. (Def.'s Ex. B.) The warrant application was reviewed and approved by a prosecutor on November 9, 2011 and by a superior

---

[5] The Plaintiff argues that this Court should strike Aliberti's statement to Hammel and any references to that statement in Hammel's arrest warrant application because Aliberti's statement is inadmissible hearsay. It is settled, however, that a finding of probable cause "may be based on hearsay." *United States v. Walsh*, 712 F.3d 119, 125 (2d Cir. 2013) (quoting *United States v. Daccarett,* 6 F.3d 37, 56 (2d Cir. 1993)). Accordingly, it was not improper for Hammel to rely upon Aliberti's statement in his arrest warrant application, nor is it improper for this Court to rely on that same statement when determining whether probable cause existed for Silano's arrest and prosecution.

court judge on November 22, 2011. (*Id.* at 4; Def.'s SMF at ¶ 31.) On November 23, 2011, Silano turned herself in to the Trumbull Police Department for arrest. (Def.'s SMF at ¶ 32.)

During the pendency of her criminal prosecution, Silano, through counsel, informed the state that her complaints to Pepsi were merely consumer complaints. (Rev. Compl. at ¶ 12.) She further informed the state that she did not initiate any contact with Pepsi in July 2011 but rather referred a call from Pepsi to Kingsbury. (*Id.*) In August 2012, Kingsbury met with Hammel to discuss the pending harassment charge against Silano. (Plf.'s SMF at ¶ 26; Plf.'s Ex. 11 at ¶¶ 2–3, 6.) Kingsbury stated that she spoke with Pepsi twice concerning Cooney after Silano referred Pepsi to her. (Plf.'s SMF at ¶ 26; Plf.'s Ex. 11 at ¶¶ 4, 6.) Kingsbury also related the content of her conversations with Pepsi to Hammel. (*Id.*) The Plaintiff contends that Hammel did not thereafter attempt to amend his arrest warrant affidavit or bring an end to her harassment prosecution.

Many months later, on October 18, 2013, a hearing was held in Silano's harassment case. (Def.'s SMF at ¶ 34; Def.'s Ex. H.) At that hearing, the state indicated that it planned to enter a *nolle prosequi*[6] concerning the harassment charge. (Def.'s Ex. H. at 1:21.) Silano then moved to dismiss the charge. (*Id.* at 2:22–23.) Thereafter, the court engaged in the following colloquy with Silano:

> THE COURT: Are you willing to admit probable cause for that arrest?
>
> MS. SILANO: Uhm, I have — yeah. No. Probable cause, I guess for the mock investigation that the cop engaged in and satisfies to his probable cause. All he had to do was just investigate and he would've found there was none. As a matter of fact there's a pending civil action against Mr. Cooney for false statement, for

---

[6] "Under Connecticut law, a prosecutor may decline to prosecute a case by entering a *nolle prosequi*. Conn. Practice Book § 39-31 (2017). The effect of a *nolle* is to terminate a particular prosecution against the defendant. However, a *nolle prosequi* is not the equivalent of a dismissal of a criminal prosecution with prejudice, because jeopardy does not attach." *Spak v. Phillips*, 857 F.3d 458, 463 (2d Cir. 2017).

6

> abusive process, and malicious prosecution, Your Honor.[7] So, I can't —
>
> [PROSECUTOR]: Let me make a record on this, Your Honor.
>
> MS. SILANO: — I can't — I don't believe there was culpability on the part of the police department and they have to go right there given a false statement, they have to act on it.
>
> THE COURT: I would ask you whether you admit that the police had probable cause to make the arrest.
>
> MS. SILANO: Yeah, I can — they were lied to, they were. They were lied to. They had probable cause.
>
> THE COURT: So based on the information that they had, you're conceding that they had probable cause.
>
> MS. SILANO: I believe they did.
>
> THE COURT: Okay.
>
> MS. SILANO: Based on the false information that was provided to the police, they had probable cause to act as they did.

(*Id.* at 2:27–4:2 (footnote added).) After Silano stipulated to the existence of probable cause, the court granted her motion to dismiss. (*Id.* at 4:3–4.)

Nine months later, on July 21, 2014, Silano filed a complaint against Cooney and Hemlock Manor. *Silano v. Cooney, et al.*, No. FBT-cv-14-6045374-S. The operative complaint in that action contained counts for malicious prosecution, libel *per se*, and slander *per se*. *Silano v. Cooney, et al.*, No. FBT-cv-14-6045374-S, 2017 WL 1194322, at *1 (Conn. Super. Ct. Feb. 22, 2017). After a bench trial, the court rendered judgment in favor of the defendants on all counts.[8] *Id.* at *6. In its decision, the court identified alternative bases for rendering judgment in the

---

[7] It is unclear which action Silano is alluding to, as she did not commence her malicious prosecution and defamation action against Cooney for his harassment complaint until July 21, 2014. *Silano v. Cooney, et al.*, No. FBT-cv-14-6045374-S. She may have been alluding to another lawsuit, however. *See Silano v. Cooney, et al.*, No. FBT-cv-14-6045374-S, 2017 WL 1194322, at *3 n.3 (Conn. Super. Ct. Feb. 22, 2017).

[8] Silano's appeal of this judgment remains pending. *Silano v. Cooney, et al.*, AC 40293.

7

defendants' favor. Relevant to the instant motion, the court found that, after receiving Cooney's complaint, "Detective Hammel did a thorough follow-up investigation, including obtaining Aliberti's statement and numerous conversations with Aliberti, both prior and subsequent to receiving the statement, which led to [Silano's] arrest." *Id.* at *4. The court further concluded that "Cooney's statements, coupled with and corroborated by Aliberti's statements, clearly established probable cause for the [harassment] charge against [Silano]." *Id.* Relatedly, the court concluded that Silano's libel and slander claims failed because, among other things, "Cooney's statements to Detective Hammel and the Trumbull Police Department were truthful, based upon the credible evidence." *Id.* at *5.

**Procedural History**

On December 14, 2016, the Plaintiff initiated the instant action against Hammel, Cooney, and others in the superior court of Connecticut. *Silano v. Hammel, et al.*, No. FBT-cv-16-6061161-S. She subsequently withdrew her claims against all defendants except Hammel. *Id.*, Entry Nos. 194.00, 198.00. She also filed what is now the operative complaint in this matter, alleging malicious prosecution, in violation of the federal constitution and state common law. *Id.*, Entry No. 197.00. The Defendant thereafter immediately removed the case to federal court. *Id.*, Entry Nos. 199.00, 199.10; ECF No. 1. On August 20, 2018, the Defendant moved for summary judgment on all claims arising out of the purported malicious prosecution. Alternatively, with respect to the constitutional claim, the Defendant argues that he is entitled to qualified immunity.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

8

Civ. P. 56(a). Significantly, the inquiry being conducted by the court when reviewing of a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

As a result, moving party satisfies his burden under Rule 56 "by showing — that is pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party must set forth "'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Id. Accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

**Discussion**

The Plaintiff alleges that her arrest on the charge of harassment in the second degree amounted to malicious prosecution and a violation of her Fourth Amendment rights under the United States Constitution.[9] Under federal and Connecticut law, "a plaintiff asserting malicious

---

[9] The Defendant argued in his reply memorandum that the Plaintiff abandoned her federal malicious prosecution claim during the briefing of the instant motion for summary judgment. It is unclear whether the Plaintiff has abandoned her federal malicious prosecution claim, in part, because of the substantial overlap between federal and state law malicious prosecution claims. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) ("*pro se* litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover"). Assuming, *arguendo*, the Plaintiff has not abandoned her federal malicious prosecution claim, it fails for the same reason as her state malicious prosecution claim.

9

prosecution must prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (internal quotation marks omitted) (Connecticut law). *Accord Lanning v. City of Glens Falls*, 908 F.3d 19, 24–25 (2d Cir. 2018) (federal law). A plaintiff asserting a claim of malicious prosecution under § 1983 must further establish that "(1) the defendant is a state actor, and (2) the plaintiff who was subject to malicious prosecution was also subject to arrest or seizure within the meaning of the Fourth Amendment." *Spak*, 857 F.3d at 461 n.1.

The Defendant argues that there is no genuine issue of material fact that he had probable cause for the Plaintiff's arrest. As such, he argues that he is entitled to judgment as a matter of law. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("continuing probable cause is a complete defense to a constitutional claim of malicious prosecution"); *D'Angelo v. Kirschner*, 288 Fed. Appx. 724, 726 (2d Cir. 2008) (summary order) (same); *Brooks v. Sweeney*, 299 Conn. 196, 211 (2010) ("The existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law."). The Defendant's primary argument is that the Plaintiff previously stipulated to the existence of probable cause in order to obtain a dismissal of that charge in her criminal case and therefore she cannot now challenge the existence of probable cause in this forum.

Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). Judicial estoppel applies where

(i) "the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding"; (ii) "that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment"; and (iii) the court determines that "the particular factual circumstances of the case 'tip the balance of equities in favor'" of precluding the claim or defense. *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266–267 (2d Cir. 2018) (internal quotation marks omitted). The purpose of the judicial estoppel doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001). *See also Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) ("The purposes of the doctrine are to 'preserve the sanctity of the oath' and to 'protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.'").

On October 18, 2013, the state was prepared to enter a *nolle prosequi* on the charge of harassment in the second degree, but the Plaintiff wanted the harassment charge dismissed. In order to obtain that dismissal, the Plaintiff stipulated to the existence of probable cause for her arrest. Indeed, her acknowledgement was unequivocal. While she asserted that the police had been lied to, a claim which is consistent with her subsequent lawsuit against Cooney, she recognized that the lies (had they been true) established probable cause for her arrest. Through this malicious prosecution action, the Plaintiff now attempts to challenge the existence of probable cause for her arrest. This is not a novel gambit, and it is one that courts in this district have previously rejected. *E.g.*, *Mpala v. Funaro*, No. 3:13-cv-00252 (SALM), 2015 WL 7312427, at *6 (D. Conn. Nov. 19, 2015) (holding that defense counsel's stipulation to probable cause to obtain dismissal sought by client was binding on client in subsequent false arrest and malicious prosecution suit), *aff'd sub nom. Impala v. Funaro*, 675 Fed. Appx. 82, 84 (2d Cir. 2017) (summary

11

order); *Simonetti v. City of Bridgeport*, No. 3:04-cv-01732 (JCH), 2006 WL 3098764, at *5 (D. Conn. Oct. 31, 2006) ("[T]he court believes that Simonetti's 'deal' with the state disallows his attempt to 'have his cake and eat it, too.' He cannot now say there was no probable cause when he earlier, to obtain a benefit, agreed that there was." [citation omitted]), *aff'd*, 277 Fed. Appx. 53, 53 (2d Cir. 2008) (summary order). *See Roesch v. Otarola,* 980 F.2d 850, 853 (2d Cir. 1992) ("A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim.").

The Plaintiff argues that she should not be bound by her earlier stipulation because she was unaware of Kingsbury's statement to Hammel at the time she stipulated to the existence of probable cause. From an equitable standpoint, the Plaintiff maintains that this is significant because Kingsbury's statement vitiated the existence of probable cause. The Plaintiff's argument is fatally flawed. Whether or not she knew that Kingsbury had spoken to Hammel, it is undisputed that she knew about Kingsbury's conversations with Pepsi at the time of her stipulation and that she, through counsel, had even told the state that she referred Pepsi to Kingsbury in July 2011. Consequently, to the extent Kingsbury's evidence is considered exculpatory, the Plaintiff was aware of it's existence prior to stipulating to probable cause. The Plaintiff could have, but did not, use this purportedly exculpatory information to defend against the harassment charge or to seek an unqualified dismissal of the information. Accordingly, the fact that Kingsbury might have reported her conversations with Pepsi to Hammel does not tip the balance of equities in her favor, and judicial estoppel forecloses her claim that the Defendant lacked probable cause. Because lack of probable cause is an essential element of a claim for malicious prosecution, summary judgement in favor of the Defendant is proper.

In light of the determination that the Plaintiff's stipulation to probable cause is binding upon her, this Court need not make a separate finding as to whether there is a genuine issue of material fact as to whether probable cause existed for her arrest. Nonetheless, a review of the parties' submissions demonstrates that no such genuine issue exists.[10]

The Plaintiff was charged with harassment in the second degree. "A person is guilty of harassment in the second degree when . . . with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." Conn. Gen. Stat. § 53a-183(a)(3). At the time of Silano's prosecution, a prosecution for harassment had to be based on harassing or alarming conduct. *See State v. Moulton*, 310 Conn. 337, 342 (2013). The Plaintiff contends that there are issues of fact concerning whether probable cause existed to arrest her for this offense.

"Probable cause is a mixed question of law and fact. Questions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury. However, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (citations omitted; internal quotation marks omitted).

Probable cause "exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested. Probable cause is to be assessed on an objective basis. Whether probable cause exists depends

---

[10] Because the Court concludes that the Plaintiff's claim fails on the merits, it need not address the Defendant's other defenses, to include collateral estoppel based upon the trial court's findings in *Silano v. Cooney, et al.*, No. FBT-cv-14-6045374-S, 2017 WL 1194322 (Conn. Super. Ct. Feb. 22, 2017); *see Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018) (setting forth elements of collateral estoppel defense); or qualified immunity defense; *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (setting forth elements of qualified immunity defense).

upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. An arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Zellner v. Summerlin*, 494 F.3d 344, 368–69 (2d Cir. 2007) (alteration omitted; citations omitted; emphasis omitted; internal quotation marks omitted).

When an arrest is made pursuant to a warrant issued by a neutral magistrate, probable cause is presumed. *Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issue by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."). To overcome this presumption, a plaintiff must show that "the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir. 1991)). "In determining whether omitted information was necessary to the finding of probable cause, we look to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the arrest as a matter of law." *McColley v. Cty. of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014) (internal quotation marks omitted).

Here, the Plaintiff asserts that her statements to the Defendant were wrongly omitted from the arrest warrant application and that, had those statements been included, they would have

precluded a finding of probable cause.[11] The Plaintiff is incorrect. Although her statements might have established a plausible claim of innocence, "[t]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006) (citation omitted; internal quotation marks omitted). This is because an officer "need not . . . believe with certainty that the arrestee will be successfully prosecuted." *Id.* at 396 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). He needs merely "a reasonable basis for believing there is probable cause" before making an arrest. *Id.*

Nor is it inherently improper for an officer to omit a suspect's protestations of innocence from an arrest warrant application. As one court within this Circuit has aptly explained:

> The police and prosecutors are not required to disclose all of their evidence in an application for an arrest warrant or at a felony hearing, and are not generally required to disclose all discrepancies or potential weaknesses in the case uncovered during the investigation. The discrepancies often encountered in police investigations may impair their ability to prove guilt beyond a reasonable doubt at trial, but they generally have little bearing at preliminary stages where the only relevant concern is whether there is sufficient evidence to show probable cause to believe the defendant committed the crime.

*Carson v. Lewis*, 35 F. Supp. 2d 250, 260 (E.D.N.Y. 1999) (citations omitted; internal quotation marks omitted). *Accord Richards v. City of New York*, No. 97-cv-07990 (MBM), 2003 WL 21036365, at *16 (S.D.N.Y. May 7, 2003). *See also Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of

---

[11] The Plaintiff also relies on the Defendant's alleged conduct relating to her criminal prosecution on different and unrelated charges. What the Defendant did or did not do in another criminal proceeding is not germane to the question of whether the arrest warrant here was supported by probable cause.

innocence before making an arrest."); *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989) ("It would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest warrant could be issued with impunity.").

To be sure, "the police may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause." *Richards*, 2003 WL 21036365, at *16. In this case, however, Cooney's statement to the police about Silano's allegedly harassing and annoying conduct, as corroborated by Aliberti, plainly established probable cause to believe that Silano placed calls to Pepsi with the intent to harass, annoy, or alarm Cooney and in a manner likely to cause annoyance or alarm. Silano's protestations of innocence, by themselves, do not void this probable cause.

Finally, the Plaintiff contends that Kingsbury's statement to Hammel, coming after her arrest, undermined the existence of probable cause for her continued prosecution. Specifically, the Plaintiff argues that Kingsbury's statement corroborated her assertion that she had a proper basis for calling Pepsi to complain about Cooney and, therefore, did not act with the necessary intent to harass. The Court does not agree that Kingsbury's statement eliminated probable cause. Kingsbury knew nothing of the phone call Silano allegedly made to Pepsi on July 28, 2011, the very call that prompted Cooney to file the sworn statement in which he accused Silano of harassment. Nor did Kingsbury purport to know Silano's intent in making any other call to Pepsi in 2010 or 2011. At most, Kingsbury's statement created a "he-said-she-said" situation between Cooney and Aliberti on the one hand, and Silano and Kingsbury on the other. Hammel was not required to accept Silano's and Kingsbury's version of events over that of Cooney and Aliberti.

16

*See Krause,* 887 F.2d at 372 ("It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer.").

For all the foregoing reasons, there is no genuine issue of material fact that the Defendant had probable cause to arrest the Plaintiff.

**Conclusion**

Based on the foregoing analysis, the Defendant's Motion for Summary Judgment [ECF No. 48] is GRANTED. The Clerk is hereby directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of March 2019.

                                              ___*/s/ Kari A. Dooley*_____
                                              KARI A. DOOLEY
                                              UNITED STATES DISTRICT JUDGE